UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DONALD RAY MIDDLEBROOKS, and )
on behalf of Unit Two Inmates, )
                                )
              Plaintiffs, )
                                )
v.                              )        Case No. 3:06-0562
                                )        Judge Bryant
DEPUTY COMMISSIONER ROLAND )
COLSON, ET AL., )
                                )
              Defendants. )

To:    The Honorable Robert L. Echols, United States District Judge

REPORT AND RECOMMENDATION

For the reasons stated below, the undersigned RECOMMENDS that: 1) the other "Unit Two

Inmates" in whose names the plaintiff seeks to bring this action be stricken as parties; 2) the

plaintiff's defective-plumbing claim be dismissed without prejudice for failure to exhaust his

administrative remedies; 3) the plaintiff's job-loss claim be dismissed as frivolous within the

meaning of 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1); and 4) that any appeal NOT be certified

as taken in good faith under 28 U.S.C. § 1915(a)(3).

I.  INTRODUCTION

The plaintiff, proceeding *pro se* and *in forma pauperis*, is a death row inmate incarcerated

in the Riverbend Maximum Security Institution ("Riverbend") in Nashville, Tennessee.  A review

of the record shows that the plaintiff has raised two distinct claims that, in form, appear to have been

intended as two separate complaints.  The first, signed by the plaintiff on January 19, 2006, pertains

to alleged long-standing plumbing problems in Unit Two at Riverbend where death-row inmates are

housed.  The second, signed but undated, pertains to alleged constitutional violations arising from

circumstances that resulted in the plaintiff's loss of his prison job.[1]

The plaintiff raises his claims under 42 U.S.C. § 1983, naming the following defendants in both actions: 1) Roland Colson, Deputy Commissioner, Tennessee Department of Correction (TDOC); 2) Ricky Bell, Warden at Riverbend; 3) Mike Crutcher, Deputy Warden at Riverbend; 4) Mike Slaughter, Unit Manager at Riverbend. In his defective-plumbing claim, the plaintiff also names TDOC and Riverbend as defendants. Although the plaintiff does not specify in what capacities he is suing the defendants in his defective-plumbing claim, in his job-loss claim, he specifies that he is suing the defendants in their official capacity only. In both instances, the plaintiff seeks money damages and injunctive relief, alleging that the defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments.

This action was referred to the Magistrate Judge on May 31, 2006 to conduct an initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A, and to conduct further proceedings, if necessary, under Rule 72, Fed. R. Civ. P. and the Local Rules of Court. (Docket Entry No. 3) In the event that the Magistrate Judge recommended that this action be dismissed under §§ 1915(e)(2) and 1915A, the Magistrate Judge was further instructed to consider whether any appeal of the Report and Report and Recommendation (R&R), if adopted by the Court, would be in good faith under 28 U.S.C. § 1915(a)(3). (Docket Entry No. 3) This matter was reassigned by Magistrate Judge Griffin to the undersigned on September 28, 2006. (Docket Entry No. 4)

## II. BACKGROUND

The plaintiff's first claim is that Unit Two at Riverbend has had plumbing problems since 1989. (Docket Entry No. 1A, p. 5) According to the plaintiff, these plumbing problems result in

---

[1] The following convention is used to distinguish between these two documents. The plaintiff's job-related claim, with the docket entry **1** appearing in red ink on the first page, will be referred to as "Docket Entry No. 1." The plaintiff's plumbing related claim will be referred to as "Docket Entry No. 1A)."

Case 3:06-cv-00562   Document 5   Filed 12/06/06   Page 2 of 18 PageID #: 102

water and raw sewage overflowing into the cells. (Docket Entry No. 1A, pp. 5-8) The plaintiff makes specific reference to a single incident in 1997 when such an event allegedly occurred. (Docket Entry No. 1A, p. 6) According to the plaintiff, in addition to potential health-related issues caused by the plumbing problems, the overflows/backups create electrical and fire hazards. (Docket Entry No. 1A, pp. 7)

The plaintiff asserts that he filed a grievance in <u>1994</u> in response to which he maintains that the TDOC Commissioner at the time admitted that the problem existed, and gave assurances that corrective action would be taken. (Docket Entry No. 1A, p. 5) According to the plaintiff, no corrective action was taken. (Docket Entry No. 1A, pp. 6-7) The plaintiff claims that he filed another grievance on March 28, 2005 with the same result. (Docket Entry No. 1A, p. 7)

The plaintiff avers that, even though TDOC officials have been aware of the plumbing problem since 1989, inmates in Unit Two continue to be exposed to hazards related thereto. (Docket Entry No. 1A, pp. 5-8) Moreover, the plaintiff alleges that the problem has worsened with the creation of what he describes as a "Chine[]s[e] cell" in which the toilet can be flushed only three times each hour. (Docket Entry No. 1A, p. 7)

In his second claim, the plaintiff asserts that he lost his prison job because he would not waive his rights in connection with a MSNBC documentary filmed at Riverbend. More particularly, the plaintiff alleges that Unit Manager Slaughter came to the plaintiff's workplace at Riverbend and informed him and the other inmates present that they were required to sign a waiver of their rights to be photographed, but that anything that the inmates might say during the documentary could be used against them "in a court of law at any time." (Docket Entry No. 1, p. 8; Attach. TDOC Form CR-0555 (Rev. 5-01)) The plaintiff alleges that Unit Manager Slaughter, allegedly speaking on behalf of Warden Bell, advised the plaintiff and the others that, if they did not sign the waiver, they "would be fired and sent back to [their] cells." (Docket entry No. 1, p. 8) Although the plaintiff

3

alleges that he was "subjected to official oppression, intimidation and coercion," and that Warden

Bell and Unit Manager Slaughter "conspire[d] to deprive [him] and his co-workers of their . . .

constitutionall[y] protected rights," he signed the waiver form.  (Docket Entry No. 1, pp. 9-10)

The plaintiff avers that he telephoned the assistant public defender assigned to his death

penalty case later that day, who advised the plaintiff that he should not participate in the MSNBC

documentary.  (Docket Entry No. 1, p. 10)  Acting on the advice of counsel, the plaintiff withdrew

the waiver and was terminated from his job.  (Docket Entry No. 1, p. 10)

The plaintiff asserts that he filed a grievance challenging his termination under Title VI of

the Civil Rights Act of 1964, and has provided documentation that supports his claim that he

exhausted his administrative remedies with respect to his Title VI claim.  (Docket Entry No. 1, p.

10 cont.; Attach. Griev. Docs.)[2]  The plaintiff alleges, and the documentation provided supports his

claim, that the grievance board ruled in his favor, but that Warden Bell overruled the grievance

board's recommendation.  (Docket Entry No. 1, p. 10 cont.; Attach. Griev. Docs.)  The record also

supports the plaintiff's claim that Deputy Commissioner Colson concurred in Warden Bell's ruling.

(Docket Entry No. 1, p. 10 cont; Attach. Griev. Docs.)

### III. ANALYSIS

To state a claim under § 1983, the plaintiff must allege and show: 1) that he was deprived

of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was

caused by a person acting under color of state law.  *Parratt v. Taylor*, 451 U.S. 527, 535

(1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*,

436 U.S. 149, 155-56 (1978); *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir.

1998).  Both elements of this two-part test must be met to support a claim under § 1983.  *See Christy*

---

[2]  The page in the complaint on which this factual allegation is provided is an unnumbered continuation of page 10, and is attached between pages 10 and 11 of the complaint.

4

*v. Randlett*, 932 F.2d 502, 504 (6ᵗʰ Cir. 1991).

Under the Prison Litigation Reform Act (PLRA), the Court is required to dismiss a prisoner-plaintiff's complaint if it is determined to be frivolous, malicious, or if it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b). A complaint is frivolous and warrants dismissal when the claims "lack[] an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Claims lack an arguable basis in law or fact if they contain factual allegations that are fantastic or delusional, or if they are based on legal theories that are indisputably meritless. *Id.* at 327-28; *Brown v. Bargery*, 207 F.3d 863, 866 (6ᵗʰ Cir. 2000); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198-99 (6ᵗʰ Cir. 1990). Although *pro se* complaints are to be construed liberally by the courts, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), under the PLRA, "courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal," *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6ᵗʰ Cir. 1997).

### A. Other Putative Plaintiffs

The style of the case shows that the plaintiff is bringing this action on behalf of the other "Unit Two Inmates." However, the plaintiff, a *pro se* prisoner, may not represent the other inmates in whose names he has brought this action. *See Kirk v. Simpson*, No. 91-6513, 1992 WL 245924 at * 1 (6ᵗʰ Cir. Sep. 29, 1992)(citing *Bonacci v. Kindt*, 868 F.2d 1442, 1443 (5ᵗʰ Cir. 1991)). More particularly, a prisoner who initiates a civil action in his individual capacity is limited to asserting alleged violations of his own constitutional rights and, absent a request for class certification, lacks standing to assert the constitutional rights of other prisoners. *Newsom v. Norris*, 888 F.2d 371, 381 (6ᵗʰ Cir. 1989). The petitioner has not requested class certification under Rule 23(a), Fed. R. Civ. P. However, even if he had, the Sixth Circuit has held that non-attorneys proceeding *pro se* cannot adequately represent a class. *See e.g.*, *Ziegler v. Michigan*, No. 03-1773, 2004 WL 162545 *2 (6ᵗʰ Cir. Jan. 23, 2004)(citing *Fymbo v. State Farm Fire and Cas. Co.*, 213 F.3d 1320, 1321 (10ᵗʰ Cir.

Case 3:06-cv-00562   Document 5   Filed 12/06/06   Page 5 of 18 PageID #: 105

2000)(non-attorney litigants cannot adequately represent the class)).

For the reasons explained above, the undersigned recommends that this action be deemed to pertain only to plaintiff Middlebrooks, and that the other "Unit Two Inmates" be stricken as parties.

### B. Plaintiff's Defective Plumbing Claim

Under the PLRA, a prisoner is required to exhaust all available administrative remedies before filing a § 1983 action in district court. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 733 (2001); *Brown v. Toombs*, 139 F.3d 1102, 1103-04 (6th Cir. 1998). The exhaustion requirement of § 1997e(a) is "mandatory," and "prisoners must exhaust [available] grievance procedures before filing suit in federal court even though the . . . remedy sought is not an available remedy in the administrative process." *Wyatt v. Leonard*, 193 F.3d 876, 877-78 (6th Cir. 1999).

Before the district court may adjudicate any claim set forth in a prisoner-plaintiff's complaint, it must determine first that the prisoner-plaintiff has complied with this exhaustion requirement. *Brown*, 139 F.3d at 1004. Not only is a prisoner-plaintiff required to exhaust remedies as to each defendant, *see Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999); *see also Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003); *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 733-734 (6th Cir. 2003), he must show that he has exhausted remedies for every claim presented in his complaint, *see Bey v. Johnson and Trierweiler*, 407 F.3d 801, 806 (6th Cir. 2005)(adopting the total exhaustion rule); *Rinard v. Luoma*, 440 F.3d 361 (6th Cir. 2006)(following the holding in *Bey v. Johnson and Trierweiler* that established "total exhaustion" as the law in the Sixth Circuit).[3] If a prisoner fails to show that he has exhausted his administrative

---

[3] The Court is aware that the Sixth Circuit law on "total exhaustion" is now in a state of flux following two recent decisions by one panel of the Sixth Circuit. *See Bell v. Konteh, et al.*, 450 F.3d 651 (6th Cir. 2006)(Moore, Cole, and Clay, JJ.); *Spencer v. Bouchard, et al.*, 449 F.3d 721 (6th Cir. 2006)(Moore, Cole, and Clay, JJ.). The Court also is aware that the United States Supreme Court has granted *certiorari* to resolve the "total exhaustion" question. *Williams v. Overton*, __ U.S. __, 126 S.Ct. 1463 (2006); *Jones v. Bock*, __ U.S. __, 126 S.Ct 1462 (2006). As shown

6

remedies, his complaint is subject to *sua sponte* dismissal. *Brown*, 139 F.3d at 1004.

To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must show that he presented his grievance "through one complete round" of the grievance process. *Thomas*, 337 F.3d at 733. A prisoner does not exhaust available administrative remedies when he files a grievance but "d[oes] not appeal the denial of that complaint to the highest possible administrative level." *Wright v. Morris*, 111 F.3d 414, 417 n. 3 (6ᵗʰ Cir. 1997), *cert. denied*, 522 U.S. 906 (1997); *see also Freeman v. Francis*, 196 F.3d 641, 645 (6ᵗʰ Cir. 1999). Neither may a prisoner abandon the process before completion and then claim that he exhausted his remedies, or that it is now futile for him to do so. *See Hartsfield,* 199 F.3d at 309 (*citing Wright*, 111 F.3d at 417 n. 3).

The burden is on the prisoner to demonstrate that he has exhausted his administrative remedies. *Brown*, 139 F.3d at 1004. To establish that he did so prior to filing suit, a prisoner should attach to his complaint a copy of any decision demonstrating the administrative disposition of his claims. *See Knuckles El v. Toombs*, 215 F.3d 640, 642 (6ᵗʰ Cir. 2000); *Wyatt*, 193 F.2d at 878; *Brown*, 139 F.3d at 1104. However, where no documentation is provided, absent particularized averments regarding the nature of the administrative proceedings and their outcome, the action must be dismissed under § 1997(e). *Knuckles El*, 215 F.3d at 642.

The plaintiff claims to have filed a grievance on this matter in 1994 and again on March 28, 2005. Disregarding that the plaintiff filed the 1994 grievance more than a decade before bringing this action, he has not provided any documentation regarding either of these two grievances. Therefore, the burden falls to him to plead the exhaustion requirement with particularity.

Although the plaintiff asserts that he "exhausted his administrative remedies," and that "[a]t all levels of the process . . . officials ruled that the plumbing in Unit 2 was faulty," he does not

---

below, however, the Court does not rely on *Bey* and *Rinard* in its analysis of the PLRA's exhaustion requirement.

provide any information about the grievances themselves, *i.e.*, the specific claim(s), the facts alleged, and those against whom he filed the grievances. In other words, apart from his generalized references to having exhausted remedies for these two grievances, the plaintiff has failed to show that he exhausted his administrative remedies prior to raising this issue in district court.

A "prisoner may not exhaust administrative remedies during the pendency of the federal suit," *Freeman*, 196 F.3d at 645, and the "courts have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal," *Baxter v. Rose*, 305 F.3d 486, 488-490 (6th Cir. 2002); *McGore*, 114 F.3d at 612. Therefore, the plaintiff's plumbing-related claim should be dismissed without prejudice for failure to exhaust administrative remedies.

### C. Plaintiff's Job-Loss Claim

#### 1. Official Capacity Only Lawsuit

As previously noted, *supra* at p. 2, the plaintiff specifically names the defendants in his job-loss claim in their official capacities only. In an official-capacity-only lawsuit, the real party in interest is the represented governmental entity. *See Hafer v. Mels,* 502 U.S. 21, 25-26 (1991). In suing those whom he has named as defendants in their official capacities only, the plaintiff is, in effect, suing the State of Tennessee. To be entitled to relief under § 1983 against the defendants in their official capacities, the plaintiff must claim that the alleged violations of his constitutional rights stemmed from a <u>State of Tennessee</u> policy, regulation, decision, custom, or the tolerance of a custom of such violations by the <u>State of Tennessee</u>. Otherwise, a § 1983 claim will not lie. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Department of Soc. Servs,* 436 U.S. 658, 690-91 (1978); *Doe v. Claiborne County,* 103 F.3d 495, 507-09 (6th Cir. 1996). The plaintiff neither alleges, nor can it be liberally inferred from the complaint, that any <u>State of Tennessee</u> policy, regulation, decision, custom, or tolerance of a custom of such violations by the <u>State of Tennessee</u>, was responsible for the alleged violation of his constitutional rights. Consequently, the defendants

have no liability under § 1983 in their official capacities.

For the reasons stated above, the plaintiff's job-related claim against the defendants lacks an arguable basis in law or fact. Therefore, this claim should be dismissed as frivolous under 28 U.S.C. §§ 1915(d)(2)(B)(i) and 1915A(b)(1).

The following is provided in the event that the Court does not concur in the undersigned's analysis of the plaintiff's claim against the defendants in their official capacities.

### 2. Deputy Commissioner Colson

The plaintiff's claim against Deputy Commissioner Colson is based solely on the fact that Deputy Commissioner Colson concurred in Warden Bell's ruling on the plaintiff's grievance. Although not stated as such, it is apparent from the complaint that the plaintiff's legal theory is that Deputy Commissioner Colson is liable for the other defendants' alleged actions under the doctrine of *respondeat superior* because he: 1) failed to intervene on the plaintiff's behalf based on the grievance that the plaintiff filed; and 2) failed to supervise the other defendants properly.

The law is well settled that actions brought against state actors cannot be maintained on a theory of *respondeat superior, see e.g., Monell, et al.*, 436 U.S. at 659, 691-95; *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982), unless the defendant was personally involved in the alleged violations of the plaintiff's constitutional rights, *see e.g., Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). For liability to attach, the defendant must have "encouraged . . . directly participated . . . authorized, approved, or knowingly acquiesced . . . ." in the violations alleged. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

In addition to the foregoing, when a state actor's role is limited to the denial of administrative grievances, or the failure to act with respect to such grievances, such state actors are not liable under § 1983 on the theory that their actions constituted an acquiescence with respect to

9

the alleged unconstitutional conduct. *Id.* The foregoing also pertains to lawsuits that attempt to impute liability based on a defendant's supervisory responsibilities. *Doe*, 103 F.3d at 507. More particularly, a "combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983." *Miller v. Bock*, No. 02-1964, 2003 WL 202173 at * 2 (6th Cir. Jan. 28, 2003)(citing *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988), *cert. denied*, 488 U.S. 1007 (1989).

The plaintiff does not allege that Deputy Commissioner Colson was directly responsible for any of the alleged actions of the other defendants. Neither does the plaintiff allege that Deputy Commissioner Colson acted pursuant to a policy or custom that violated his constitutional rights. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). Rather, the plaintiff merely asserts that Deputy Commissioner Colson did not intervene when the plaintiff filed his grievance, and that he did not properly supervise the other defendants, neither of which gives rise to a claim under § 1983.

As shown above, the plaintiff's job-related claim against Deputy Commissioner Colson lacks an arguable basis in law or fact. Therefore, it should be dismissed as frivolous under 28 U.S.C. §§ 1915(d)(2)(B)(i) and 1915A(b)(1).

### 3. Assistant Warden Crutcher

The plaintiff states the following with respect to Assistant Warden Crutcher's involvement in the alleged events that gave rise to this action:

> On 03-10-05 the grievance board ruled in favor of the plaintiff stating that relief should be granted. On 03-10-05 Warden Ricky Bell overruled [the] grievance board respon[s]e. ***On 02-16-05 Deputy Warden Mike Crutcher ruled with Warden Warden Ricky Bell.***

(Docket Entry No. 1, p. 10 cont.)(emphasis added) Apart from the foregoing, and the plaintiff's "cause of action" in which he explains why he thinks Assistant Warden Crutcher is liable, the

10

plaintiff provides no factual allegations against Assistant Warden Crutcher.

As previously noted, *supra* at p. 10, a defendant's participation in the grievance process, including the failure to act in response to a grievance, does not give rise to a claim under § 1983.

In addition to the foregoing, although *pro se* complaints are held to less stringent standards than complaints prepared by an attorney, *see Boag*, 454 U.S. at 365, the courts are not willing to abrogate basic pleading essentials in *pro se* suits, *see Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990). More than bare assertions of legal conclusions or personal opinions are required to satisfy federal notice pleading requirements. *Id*. Specifically, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988). The less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpled facts to support conclusory allegations. *Wells*, 891 F.2d at 594 (citing *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir. 1983)). Simply put, conclusory pleadings are insufficient and are subject to dismissal. *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir. 1971). Because the plaintiff's claim against Assistant Warden Crutcher is nothing more than a naked allegation, it is conclusory.

For the reasons explained above, the plaintiff's claim against Assistant Warden Crutcher lacks an arguable basis in law or fact. Therefore, this claim should be dismissed as frivolous under 28 U.S.C. §§ 1915(d)(2)(B)(i) and 1915A(b)(1).

### 4. Warden Bell and Unit Manager Slaughter

#### a. Plaintiff's First Amendment Claim

The plaintiff asserts that Warden Bell and Unit Manager Slaughter engaged in a conspiracy to deprive him of his constitutional rights, *i.e.*, to terminate him from his prison job. The undersigned liberally construes the complaint also to allege that Warden Bell and Unit Manager

11

Slaughter retaliated against the plaintiff by terminating his prison job because he withdrew his signed waiver form.

(1) Plaintiff's Conspiracy Claim

It is apparent from the complaint that the plaintiff's conspiracy claim pertains to the alleged conspiracy to terminate his employment. To establish a *prima facie* case of civil conspiracy, the plaintiff must show that: 1) there was an agreement between two or more persons to injure another by unlawful action; 2) there was a single plan; 3) the alleged conspirators shared in the general conspiratorial objective; 4) an overt act was committed in furtherance of the conspiracy; 5) the overt act injured the plaintiff. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)(citing *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). Under § 1983, the conspiratorial objective must have been to deprive the plaintiff of a right arising under the Constitution or laws of the United States, *see Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999); *see also Parratt*, 451 U.S. at 535, and the plaintiff must prove an actual deprivation of such a right, *Askew*, 191 F.3d at 957 (citing *Villanueva v. McInnis*, 723 F.2d 414, 416 (5th Cir. 1984)).

The law is well established that a prisoner does not have a constitutional right to a particular job, or to any job at all for that matter. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Newsom*, 888 F.2d at 374; *Canterino v. Wilson*, 869 F.2d 948, 952-954 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Bishop v. Wood*, 426 U.S. 341 (1976). Because the plaintiff does not have a constitutional right to a prison job, he cannot establish that he was deprived of a right protected under the Constitution or laws of the United States. Consequently, he cannot make a showing of conspiracy under § 1983.

As reasoned above, the plaintiff's conspiracy claim against Warden Bell and Unit Manager Slaughter lacks an arguable basis in law or fact. Therefore, the claim should be dismissed as frivolous under 28 U.S.C. §§ 1915(d)(2)(B)(i) and 1915A(b)(1).

12

(2) Plaintiff's Retaliation Claim

The waiver form that the plaintiff originally signed granted permission to be photographed subject to the following:

> I grant this permission freely and voluntarily, and I fully understand that I have the right to decline to be interviewed, recorded, or photographed. Further, I fully understand that anything I say during the interview may be used against me in a court of law at any time. Finally, I reserve the right to end the interview at any time.

(Docket Entry No. 1, Attach. Form (CR-0555)(Rev. 5-01)) The plaintiff's subsequent withdrawal of the waiver form constitutes the basis for his retaliation claim; *i.e.*, Warden Bell and Unit Manager Slaughter retaliated against the plaintiff by terminating his prison job because the plaintiff would not agree to waive his rights.

To establish a *prima facie* case of retaliation within the context of § 1983, a plaintiff must prove that: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) there is a causal connection between elements 1) and 2), *i.e.*, that the adverse action was motivated at least in part by plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)(*en banc*). In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *Thaddeus-X*, 175 F.3d at 396. In the prison context, an adverse action is one that is "comparable to transfer to administrative segregation . . . ." *Thaddeus-X*, 175 F.3d at 397.

The undersigned assumes without deciding that the plaintiff has satisfied the three requirements under *Thaddeus-X*. The next question is whether the consequences of the alleged retaliation were punitive in nature. As previously established, the plaintiff did not have a

13

constitutional right to the prison job that he lost when he withdrew his waiver form. Absent a constitutional right, the loss of that job cannot be viewed as punitive, certainly not in the sense of being confined to segregation where liberties often are curtailed or restricted. The undersigned is of the view that, if there was any harm, it was *de minimis*.

As reasoned above, the plaintiff's retaliation claim against Warden Bell and Unit Manager Slaughter lacks an arguable basis in law or fact. Therefore, the claim should be dismissed as frivolous under 28 U.S.C. §§ 1915(d)(2)(B)(i) and 1915A(b)(1).

### b. Plaintiff's Eighth Amendment Claim

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer,* 468 U.S. 517, 526- 27 (1984)). An Eighth Amendment conditions-of-confinement claim has two elements. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted). Second, the prison official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter,* 501 U.S. 294, 302-03 (1991)).

The plaintiff does not allege that he suffered an objectively serious injury, the result of which deprived him of the minimal civilized measure of life's necessities. Nor does the plaintiff allege that Warden Bell and Unit Manager Slaughter's alleged actions constituted deliberate indifference to his health and/or safety. Neither can such inferences be liberally construed from the complaint.

The plaintiff's Eighth Amendment claim against Warden Bell and Unit Manager Slaughter lacks an arguable basis in law or fact. Therefore, the claim should be dismissed as frivolous under

14

28 U.S.C. §§ 1915(d)(2)(B)(i) and 1915A(b)(1).

### c. Plaintiff's Due Process Claims

The Fifth Amendment to the United States Constitution prohibits the state from depriving any person of "life, liberty, or property, without due process of law . . . ." *U.S.Const.* amend. V. The Fourteenth Amendment to the United States Constitution also prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law . . . ." *Id.* amend. XIV, § 1. Due process has a procedural component and a substantive one. *Rosales-Garcia v. Holland*, 238 F.3d 704, 722 (6th Cir. 2001). The two are distinct from one another because they have different objectives. *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). The procedural due process component, unlike its substantive counterpart, does not require that the government refrain from making a substantive choice to infringe on a person's life, liberty, or property interest – it simply requires that the government provide "due process" before making such a decision. *Id.* The touchstone of procedural due process is the fundamental requirement that an individual have the opportunity to be heard "in a meaningful way." *Id.*; *see Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 563 (6th Cir. 1983). Substantive due process, on the other hand, serves the goal of preventing "governmental power from being 'used for purposes of oppression,'" regardless of the fairness of the procedures used. *See Daniels*, 474 U.S. at 331 (citation omitted). There are two types of substantive due process claims; those that assert a denial of a right, privilege, or immunity secured by the Constitution or a federal statute, and those that assert an official action that shocks the conscience. *Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997).

### (1) Procedural Due Process

Generally speaking, a prisoner-plaintiff cannot show a denial of due process absent an atypical and significant hardship, such as the loss of good-time credits. *See Sandin v. Conner*, 515 U.S. 472, 485-87 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). If a prisoner-

15

plaintiff cannot show that he was subjected to an atypical and significant hardship in relation to the ordinary incidents of prison life, then there is no due process violation. *Sandin*, 515 U.S. at 480-82; *Rimmer-Bey*, 62 F.3d at 790-91.

As previously noted, *supra* at pp. 12-13, a prisoner does not have a constitutional right to a job. Because a prisoner does not have a constitutional right to a job, the loss of a job to which he has no protected right does not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Newsom*, 888 F.2d at 374.

The plaintiff's procedural due process claim against Warden Bell and Unit Manager Slaughter lacks an arguable basis in law or fact. Therefore, the claim should be dismissed as frivolous under 28 U.S.C. §§ 1915(d)(2)(B)(i) and 1915A(b)(1).

## (2) Substantive Due Process

As previously noted *supra*, there are two types of substantive due process claims. The first pertains to the denial of a right, privilege, or immunity secured by the Constitution or laws of the United States. As stated repeatedly throughout, the plaintiff did not have a protected right in the prison job from which he was terminated. Moreover, because the plaintiff was permitted to withdraw his waiver of rights form, he cannot support a substantive due process claim on the ground that he was required to waive those rights. As to the second type of substantive due process claim, it can hardly be said that a prisoner's loss of a prison job to which he had no right in the first place is sufficient to "shock the conscience."

The plaintiff's substantive due process claim against Warden Bell and Unit Manager Slaughter lacks an arguable basis in law or fact. Therefore, the claim should be dismissed as frivolous under 28 U.S.C. §§ 1915(d)(2)(B)(i) and 1915A(b)(1).

## 5. Eleventh Amendment Immunity

The following is provided in the event that the Court disagrees with the preceding analysis

of the plaintiff's job-loss claims on the merits.

As previously established, the plaintiff's claim against the defendants in their official capacities actually is a suit against the State of Tennessee itself. Generally speaking, "[s]tate governments and entities that can be considered arms of the state are immune from suits for money damages under the Eleventh Amendment." *Rogers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003)(citing *Alkire v. Irving*, 330 F.3d 802, 814 (6th Cir. 2003) and *Brotherton v. Cleveland*, 173 F.3d 552, 560 (6th Cir. 1999)). The Eleventh Amendment also bars suits seeking money damages against state employees sued in their official capacities, *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989), because such suits "would impose a liability which must be paid from public funds in the state treasury," *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

Congress has not abrogated Tennessee's Eleventh Amendment immunity, nor has the State of Tennessee expressly waived its right to sovereign immunity. *See Gross v. University of Tennessee*, 620 F.2d 109, 110 (6th Cir. 1980). Therefore, the plaintiff's claims for money damages against the defendants in their official capacities are barred by the Eleventh Amendment.

For the reasons stated above, if the plaintiff's job-loss claims against the defendants are not dismissed as frivolous, as recommended *supra*, the plaintiff's claims for money damages should be denied as barred under the Eleventh Amendment.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS that: 1) the other "Unit Two Inmates" in whose names the plaintiff seeks to bring this action be stricken as parties; 2) the plaintiff's defective-plumbing claim be dismissed without prejudice for failure to exhaust his administrative remedies; 3) the plaintiff's job-loss claim be dismissed as frivolous within the meaning of 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1); and 4) that any appeal NOT be certified as taken in good faith under 28 U.S.C. § 1915(a)(3).

17

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have ten (10) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this __6th_____ Day of December, 2006.

s/ John S. Bryant
_____
John S. Bryant
Magistrate Judge

18