UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DONALD RAY MIDDLEBROOKS, et al.,** | ) ) ) |
| **Plaintiffs,** | ) |
| v. | ) No. 3:06-0562 ) JUDGE ECHOLS |
| **DEPUTY COMMISSIONER ROLAND Colson, et al.,** | ) ) ) |
| **Defendants.** | ) |

## MEMORANDUM

Pending before the Court is the Report and Recommendation ("R&R") entered by the United States Magistrate Judge on December 6, 2006 (Docket Entry No. 5), recommending that (1) the other "Unit Two Inmates" in whose names *pro se* Plaintiff Donald Ray Middlebrooks seeks to bring this action be stricken as parties; (2) Plaintiff's claim concerning defective prison plumbing be dismissed without prejudice for failure to exhaust administrative remedies; (3) Plaintiff's claim concerning the loss of his prison job be dismissed as frivolous under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1), and (4) any appeal be certified as not taken in good faith under 28 U.S.C. § 1915(a)(3). Plaintiff did not file any objections to the R&R.

## I. STANDARD OF REVIEW

In reviewing an R&R, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). The Court has carefully reviewed the entire record in this case.

1

## II. ANALYSIS

**1. Representing other inmates as putative Plaintiffs**

The Court agrees with the Magistrate Judge that Plaintiff may not represent the interests of other unnamed "Unit Two" inmates. Therefore, any such inmates named as purported plaintiffs will be stricken from the Complaint.

**2. Defective plumbing claim**

The Magistrate Judge recommends dismissing Plaintiff's claim of defective prison plumbing on the ground that Plaintiff failed to exhaust all administrative remedies as to this claim. Prisoners are not required to plead exhaustion of administrative remedies to avoid dismissal of a claim as frivolous. See Jones v. Bock, — U.S. —, 127 S.Ct. 901, 921, 923-25 (2007); Okoro v. Hemingway, 481 F.3d 873, 874 (6th Cir. 2007). Thus, the Court cannot agree with the Magistrate Judge that dismissal of this claim is proper. Plaintiff will be permitted to proceed on the claim and Defendants may raise any appropriate defense.

**3. Retaliation claim - loss of Tricore job for refusing to sign release**

The Court cannot agree with the Magistrate Judge's analysis of Plaintiff's job-loss claim. Plaintiff alleged that he was employed at the TriCore data plant at the prison on February 7, 2005. Plaintiff alleged, and the documents provided with the Complaint show, that Unit Manager Mike Slaughter told Plaintiff and other TriCore employees, at the direction of Warden Ricky Bell, that MSNBC would be videotaping a documentary at the Tricore data plant and that inmates would be required to sign a release or they would no longer be allowed to participate in the Tricore program. (Docket Entry No. 1, Complaint, Exs. at 14.) Plaintiff alleged that he initially signed the form, entitled "Release and Permission For Interview/Photography/Recording." The release stated:

2

> I grant this permission freely and voluntarily, and I fully understand that I have the right to decline to be interviewed, recorded, or photographed. Further, I fully understand that anything I say during the interview may be used <u>against</u> me in a court of law at any time. Finally, I reserve the right to end the interview at any time.

(Docket Entry No. 1, Complaint, Exs. at 16 (emphasis in original).) Plaintiff alleged that, on further reflection after signing the release, he called his lawyer, who advised him to withdraw the release and not appear in the MSNBC program. Plaintiff alleges that he then withdrew his release and as a consequence he was discharged from his Tricore data plant job, in retaliation for exercising his substantive due process right to privacy.

Plaintiff further alleged that his attorney wrote a letter to Warden Bell about the violation of Plaintiff's constitutional rights, but Warden Bell's written response to the attorney did not resolve the matter. (<u>Id.</u>, Exs. at 19-21.) Plaintiff then filed a grievance seeking reinstatement to his Tricore position and reimbursement for lost pay. Plaintiff's grievance was denied on the ground that "Inmate failed to work according to the conditions set forth by the Unit Manager." (<u>Id.</u>, Exs. at 4.) Plaintiff appealed to the Grievance Committee, which recommended that "Grievant should be compensated for time lost which was not due to his fault because of the TV special." (<u>Id.</u>, Exs. at 3.) Warden Bell disagreed with the Grievance Committee's proposal, writing: "Grievant's decision not to be at work site during MSNBC production. Should not be compensated during the time he missed before he returned. Grievant made this decision." (<u>Id.</u>) Plaintiff further appealed to Level 3, prompting Deputy Commissioner Roland Colson to send a Memorandum to the prison requesting additional information and clarification. He stated: "TDOC Policy #103.04 states inmates have a

3

right not to be photographed or interviewed." (Id., Exs. at 2 (emphasis in original)). Unit Manager Slaughter answered the request for further information in part as follows:

> On Feb. 7, 2005, I spoke to the inmates working on this day and informed them of the Warden's Instructions. Ten inmates signed the form and then three of the ten decided not to be filmed. In addition, Inmate Middlebrooks signed a form but decided not to be filmed. All inmates who refused to sign the release forms were sent back [to] the unit. . . .
>
> On Feb. 8, 2005, MSNBC filmed the inmates working in data entry. Inmate Middlebrooks refused to be filmed and this was a condition of his participation in the program. He was not present for the filming.
>
> * * *
>
> On Feb. 21, 2005, Warden Bell instructed that all inmates who refused to sign the release form could return to work. . . . Inmate Middlebrooks . . . reported to work.
>
> Therefore, Inmate Middlebrooks did not work from Feb. 8 until Feb. 21.

(Id., Exs. at 15.)

Upon receiving this information, Deputy Commissioner Colson issued another Memorandum giving his response to Plaintiff's grievance: "The Inmate Job Specialist has reviewed the grievance and concurs with the Warden in that you are not to be paid for time you did not work when the news media was filming in your work area. It was your decision not to work due to filming." (Id., Exs. at 1.)

*a. Eleventh Amendment immunity*

The Court agrees with the Magistrate Judge that Plaintiff brought suit against the Defendants in their official capacities, and thus Plaintiff is, in effect, suing the State of Tennessee. The Magistrate Judge correctly ruled that the State of Tennessee has not waived its Eleventh Amendment immunity and therefore Plaintiff cannot recover damages from the State, even if he were to succeed on a constitutional claim. (R&R at 16-17.) However, Plaintiff also seeks a declaratory judgment

4

that his constitutional rights were violated, and he requests prospective injunctive relief restraining Defendants from "forcing inmates to appear on media networks through use of coercion, intimidation, threats and retaliation." (Docket Entry No. 1, Complaint at Prayer for Relief.) These forms of relief are not precluded by the Eleventh Amendment. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 62-71 (1989).

### b. *Violation of Constitution: Due Process, Right to Privacy*

The Magistrate Judge concluded that, because Plaintiff does not have a constitutional right to hold any particular prison job, he cannot state a constitutional claim against Defendants. However, such an analysis overlooks Plaintiff's pleading that he retains a substantive due process right to privacy that was violated by the Defendants' actions. See Houchins v. KQED, Inc., 438 U.S. 1, 5 n.2 (1978) ("Inmates in jails, prisons, or mental institutions retain certain fundamental rights of privacy; they are not like animals in a zoo to be filmed and photographed at will by the public or by media reporters, however 'educational' the process may be for others.") The analysis in the R&R also overlooks Plaintiff's pleading that the decisions of Unit Manager Slaughter, Warden Bell, and Deputy Commissioner Colson to discharge Plaintiff from his Tricore position because he refused to participate in the MSNBC filming violated not only the United States Constitution, but the prison's own written policy recognizing an inmate's right to decline media interviews and photography, TDOC Policy No. 103.04.[1] Plaintiff did not append a copy of TDOC Policy No.

---

[1] Plaintiff also alleges that "[o]n 02-16-05 Deputy Warden Mike Crutcher ruled with Warden Ricky Bell." (Complaint at 11.) Plaintiff does not provide any other facts to state a claim against Deputy Warden Crutcher. Thus, the Court agrees with the Magistrate Judge that Plaintiff will not be permitted to proceed against Deputy Warden Crutcher. (R&R at 10-11.)

5

103.04 to his Complaint, but Deputy Commissioner Colson's Memorandum states that the policy exists and that inmates have a right not to be photographed.

Thus, it is error for the R&R to state that "plaintiff neither alleges, nor can it be liberally inferred from the complaint, that any State of Tennessee policy, regulation, decision, custom, or tolerance of a custom of such violations by the State of Tennessee, was responsible for the alleged violation of his constitutional rights." (R&R at 8 (emphasis in original).) In fact Plaintiff has alleged that the highest officials of the Tennessee Department of Corrections directly participated in the violation of his and other inmates' constitutional right to privacy and in doing so tolerated violation of the Department's own written policy affirming inmates' right to privacy. See Walton v. City of Southfield, 995 F.2d 1331, 1340 (6th Cir.1993) (plaintiff must allege and prove that supervisors "condoned, encouraged, or knowingly acquiesced in the alleged misconduct.")

**4. Civil Conspiracy**

The Magistrate Judge further concludes that, because Plaintiff cannot establish a constitutional right to any particular prison job, he cannot state a claim against Warden Bell and Unit Manager Slaughter for civil conspiracy to violate his constitutional rights. The Court agrees with the statement of the law of civil conspiracy set out at page 12 of the R&R. However, the same analysis outlined above with regard to the right to privacy claim applies to the civil conspiracy claim. Plaintiff has alleged sufficient facts of Warden Bell's instruction to require inmates to sign releases or lose their jobs and Unit Manager Slaughter's enforcement of that instruction to proceed to litigation on his claim that (1) Warden Bell and Slaughter made an agreement to injure another by unlawful action, (2) there was a single plan, (3) the alleged conspirators shared in the general

6

conspiratorial objective, (4) an overt act was committed in furtherance of the conspiracy, and (5) the overt act injured the Plaintiff. See Spadafore v. Gardner, 330 F.3d 849, 854 (6th Cir. 2003).

Finally, the Court agrees with the elements of a retaliation claim as set forth on page 13 of the R&R. The Magistrate Judge concludes, however, that Plaintiff will be unable to establish a *prima facie* case of retaliation because he cannot show that he suffered an adverse action "'comparable to transfer to administrative segregation,'" citing Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999) (en banc). The Magistrate Judge concludes that Plaintiff suffered only *de minimis* harm by the loss of his job.

Thaddeus-X does not hold that an adverse action must be comparable to a transfer to administrative segregation. Rather, the case provides:

> In the prison context, an action comparable to transfer to administrative segregation would certainly be adverse. In order to determine whether actions of lesser severity merit being deemed "adverse" for purposes of a retaliation claim, we adopt the standard suggested by Judge Posner in Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982), that an adverse action is one that would "deter a person of ordinary firmness" from the exercise of the right at stake."

Id. at 396. The Sixth Circuit further examined the term "adverse action" as drawn from employment case law and noted that an "adverse action" includes discharge, demotion, refusal to hire, nonrenewal of contracts, and failure to promote. Id. Here, Plaintiff alleges that he was discharged from his Tricore position in retaliation for exercising a constitutional right. Plaintiff has alleged an adverse action that would deter an inmate of ordinary firmness from exercising his privacy right. The Court concludes that Plaintiff has alleged more than *de minimis* harm.

Viewing the entire record in a light most favorable to Plaintiff, the Court cannot conclude that Plaintiff's claims of retaliation and civil conspiracy are without an arguable basis in law or fact, warranting dismissal under §§ 1915(d)(2)(B)(I) and 1915A(b)(1).

7

Although not raised by the Magistrate Judge, one or more of Plaintiff's claims may be barred by the applicable statute of limitations. Tenn.Code Ann. § 28-3-104(a)(3). The Court will allow Plaintiff to proceed on his defective plumbing, retaliation and civil conspiracy claims, but of course Defendants may raise any applicable affirmative defenses, including the statute of limitations, if appropriate.

## III. CONCLUSION

Accordingly, for all of the reasons stated, the Court will accept in part and reject in part the R&R. The R&R will be rejected with regard to Plaintiff's defective plumbing, retaliation and civil conspiracy claims. Plaintiff will be permitted to proceed on his retaliation claim against Deputy Commissioner Roland Colson, Warden Ricky Bell, and Unit Manager Mike Slaughter and on his civil conspiracy claim against Warden Ricky Bell and Unit Manager Mike Slaughter. Plaintiff may not seek damages against these Defendants because they are sued in their official capacities and the State of Tennessee has not waived its Eleventh Amendment immunity. Plaintiff may seek only declaratory and prospective injunctive relief.

The R&R will be accepted in all other respects. Plainitff may represent only himself. Thus, to the extent Plaintiff attempts to represent other "Unit Two inmates," such putative plaintiffs will be stricken from the Complaint. Plaintiff's retaliation claim against Deputy Warden Mike Crutcher will be dismissed with prejudice for failure to state a claim.

This case will be returned to the Magistrate Judge to supervise service of process on Defendants Roland Colson, Ricky Bell and Mike Slaughter and to conduct all further case management.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

9